### J. A. DAWSON v. J. D. BALDRIDGE ET AL.

Decided April 7, 1909.

**1.—Injunction—Dissolution—Answer.**

Upon motion to dissolve an injunction on bill and answer, the answer, when sworn to, in so far as it is responsive to the bill, is taken as true; but an answer not sworn to will not be considered.

**2.—Same—Pleading.**

An injunction will be dissolved when the answer fully and unequivocally denies all the material allegations of the bill upon which the complainant's equity rests. The rule, however, requires positive averments in the answer and not merely general allegations of denial based on information and belief. But a dissolution of an interlocutory injunction does not necessarily follow upon the coming in of an answer denying the material allegations of the bill upon which the injunction issued, and the court may, in the exercise of a sound discretion, refuse a dissolution and continue the injunction for a hearing, where the circumstances of the case seem to demand this course.

**3.—Same—Temporary Injunction—Practice.**

A temporary injunction should not be dissolved where its dissolution would result in irreparable injury to the plaintiff.

**4.—Same—Dissolution on Bill and Answer.**

Where a temporary injunction restrained the defendant from handling, using, appropriating or consuming any part or parcel, item or article of property belonging to a mercantile business, on a bill showing equity and asserting that plaintiff owned an interest and that the defendant made a pretended sale of the stock to his wife by which he attempted to pass the title for the purpose of defrauding plaintiff, and the verified answer showed that defendant, in violation of the trust reposed in him by plaintiff, had without authority made a simulated sale of plaintiff's property to his wife, and is claiming possession and the right to dispose of it under such sale, there was no denial of all the material allegations in the bill, and it was error to dissolve the injunction on the bill and answer.

**5.—Community Property—Sale—Husband and Wife.**

Merchandise purchased by the wife with money borrowed upon the faith of her separate property as security, is not the separate property of the wife but community property of the husband and wife. Hence a sale of merchandise by the husband to the wife, payment being made by funds borrowed by her and for the repayment of which she gave her personal obligation and pledged her separate estate, was no sale at all.

Appeal from the County Court of Edwards County. Tried below before Hon. R. P. Allison.

*Ben H. Kelly* and *Fisher & Walker,* for appellant.

*W. D. Love* and *J. T. Friestman,* for appellees.

NEILL, ASSOCIATE JUSTICE.—This is an appeal from an interlocutory order dissolving a temporary injunction issued in this case restraining the defendants J. D. and M. S. Baldridge from handling, using, appropriating or in any manner consuming or withdrawing any part or parcel, item or article of property belonging to the mercantile business of Baldridge, Whatley & Allen, located at Barksdale in Edwards County, until further order of the court.

It would be foreign to this appeal to state more of the proceedings in the case, or express any opinion upon the merits of the case, than is necessary to a decision of the question whether the temporary writ of injunction should have been dissolved.

The grounds upon which the writ was granted, as disclosed by plaintiff's petition, which was filed February 12, 1909, are substantially that on October 4, 1904, plaintiff's wife, Una Dawson, was the owner in her own right as her separate property of a general stock of goods, wares, merchandise and fixtures of the value of $1,200, which were in Bandera, Bandera County, Texas, and in possession of the defendant J. D. Baldridge who had theretofore been conducting in that town a mercantile business; that on said date the indebtedness of such business was ascertained to be $893; and then, plaintiffs entered into a written contract with Baldridge concerning said stock of goods, etc., which is as follows:

"The State of Texas, }
 County of Bandera.  }

"This agreement made and entered into this 8th day of October,

A. D. 1904, by and between Mrs. Una Dawson, who is herein joined by her husband, J. A. Dawson, for the sole purpose of expressing his assent thereto, party of the first part, and J. D. Baldridge, party of the second part, both parties being residents of Bandera County, Texas, WITNESSETH:

"1st. The said party of the first part, being the owner in her own separate right of that certain stock of goods, wares and merchandise and store fixtures situated in the town of Bandera, valued at twelve hundred dollars, and with which the said party of the second part has heretofore been doing business as a merchant, agrees, consents and contracts to and with the said second party, that he, the said second party, may remove the said stock of goods, wares, merchandise and fixtures, to the village of Concan in Uvalde County, Texas, and there enter into copartnership with the firm of Caddell Bros., or with either of them, and shall there remain in the full and peaceable possession of the said goods, wares, merchandise and fixtures, upon the faithful performance by him, the second party, of the stipulations and agreements entered into and agreed to be done by him.

"The said party of the second part hereby agrees, contracts and binds himself to take charge of said stock of goods, wares, merchandise and fixtures, and of the said business of merchandising, at said village of Concan, or other place that may be mutually agreed upon hereafter, and enter into said copartnership with said Caddell Bros., and conduct said business in a good, careful and prudent businesslike manner, in his own name, or in the name of said Baldridge and Caddell Bros., and from the proceeds thereof pay off all the present indebtedness owing by said business heretofore conducted by him at Bandera and elsewhere amounting to the sum of eight hundred and ninety-three, no /100 dollars. To keep good and accurate book accounts of each and every transaction had by him in the management of said business, which said books shall be at all times open and subject to the inspection and examination of the said party of the first part, her agent or attorney. The said party of the second part shall receive as full compensation for his said services the sum of thirty dollars per month from the proceeds of said business from this date until the said indebtedness shall be paid, when the stock of goods, wares, merchandise and fixtures then on hand shall be equally divided, or in the event that said parties shall desire to still do business together then articles of copartnership may be entered into by them.

"3d. In the event that either party to this contract shall fail, refuse or neglect to perform the conditions by her or him herein entered into, then this contract shall at once terminate, and the party so failing, refusing or neglecting to perform his or her agreements shall forfeit to the other party all his interests and rights herein conferred.

"In witness whereof, the said parties have hereunto signed their names in Bandera, this the day and date first herein written, signing in duplicate.

"Una Dawson,<br>
"J. A. Dawson,<br>
"J. D. Baldridge."

This instrument was duly acknowledged by the parties thereto.

The petition then alleges that the defendant J. D. Baldridge retained possession of the property under the agreement for the purposes stated in the agreement, charged with the duties he obligated himself thereby to discharge; that, while no time was specified in the agreement within which Baldridge should pay off the indebtedness, a reasonable time was contemplated by the parties, which is alleged in the petition to be four years; that a reasonable time has elapsed, and that Baldridge has in fact heretofore, on October 8, 1908, paid off and discharged said indebtedness, and that during the period from the date of the contract up to that time, he had used and consumed the $30 per month, allowed him by the contract for his services.

That there was on hand on October 8, 1908, after paying off the indebtedness of $893, as stipulated, and in Baldridge's possession, merchandise belonging to said business of the total value of $800, which was then subject to division, one-half of which was the property of plaintiffs. That, though often demanded, the defendant has failed and refused to deliver to plaintiffs their share of the goods or pay them the value thereof, and that under the last paragraph of the contract, by reason of Baldridge's failure to perform his part of the agreement, plaintiffs became entitled to all the merchandise on hand, or the value thereof, amounting to $800; but that, if they are mistaken in this, they are at least entitled to an undivided half interest in the stock of goods, or the value thereof, which is alleged to be $400.

That about two years ago, the exact date being unknown by plaintiffs, the defendant, J. D. Baldridge, without their knowledge or consent, made some pretended sale or transfer of said stock of merchandise to his wife, M. S. Baldridge, by which he attempted to pass the title thereto for the purpose of defrauding plaintiff out of said goods; that the attempted sale being a sham, fraudulent and colorable only, passed no title to said property.

The petition then alleges, that Baldridge some time after the pretended sale to his wife, the date being unknown to plaintiffs, after removing the stock of goods to Barksdale, Edwards County, formed a partnership in the mercantile business with one W. N. Whatley, who brought additional capital thereto, the firm then organized being known as Baldridge & Whatley; that the interest and capital placed in that firm by Baldridge was the identical stock of goods, in its various changes and mutations, that he had received from plaintiffs; that about January, 1908, one G. M. Allen bought an interest in said firm of Baldridge & Whatley and the firm name was changed to Baldridge, Whatley & Allen, and is still continued at Barksdale under such firm name; that Allen brought additional capital into the firm; but that the only capital placed in the firm by Baldridge was that placed in the partnership of Baldridge & Whatley, which was as before alleged.

That the capital in the present firm is of the value of about $4,000, of which Whatley and Allen each own about two-fifths or $1,600, and the Baldridges the remainder of about one-fifth, or $800; that each and all the members of said firm are in possession of said business and handling and carrying on therewith a general merchandise busi-

ness, each having the privilege of withdrawing from the business and appropriating to his own use whatever he may desire; that Baldridge is withdrawing therefrom constantly and appropriating the corpus and interest thereof to his own use in large quantities and values, to plaintiffs' injury and great damage, without legal right so to do; that said property is in danger of being lost, removed and materially injured; that Baldridge is insolvent, and to permit him to consume said property will work great and irreparable injury to plaintiffs, who will lose all he withdraws and consumes.

That Whatley and Allen are each resident citizens of Edwards County, Texas, and are the owners of the four-fifths interest in said firm and business as before stated, and became such owners without notice of plaintiffs' interest in the property brought into the firm by Baldridge, and are in possession thereof; and for the purpose of affecting them with such notice they are made parties defendant.

Plaintiffs aver that the facts alleged require the appointment of a receiver to take charge of and manage said business at least as to the interest of the Baldridges, which interest should be taken from their possession and control, and that they should be enjoined from having or exercising any right or control thereof or from withdrawing therefrom or appropriating to themselves in any manner any part thereof, until the question of ownership shall be decided by the court, and that unless they are so enjoined plaintiffs will suffer great loss and irreparable injury.

Plaintiffs suggest the appointment of Whatley & Allen as receivers, pray for an accounting, etc., showing the interest of the Baldridges in the firm property, etc., and for an injunction such as was temporarily granted, for judgment against Baldridge such as plaintiffs may be entitled to under the allegations and proof thereof in their petition.

The allegations in the petition were duly sworn to by J. A. Dawson; and, upon such petition, the temporary writ of injunction was awarded and issued.

The defendants Baldridge answered at great length, but as their answer was not sworn to, no notice can be taken of it by this court in determining whether the trial court erred in dissolving the temporary injunction.

The motion to dissolve the injunction contains the following statement made and sworn to by J. D. Baldridge, viz.:

"I, J. D. Baldridge, do solemnly swear that I am one of the defendants in the above entitled and numbered cause, and that my wife, M. S. Baldridge, is also a defendant in said cause. That the stock of goods in which plaintiffs had an interest at the date of the contract alleged and set up by them in their petition in this cause, was moved from Bandera, Texas, to Con Can in Uvalde County, Texas, and with said stock of goods defendant, J. D. Baldridge, conducted a mercantile business for about nine months, until the latter part of June, 1905, at which date said business was suspended for the reason that it was being run at a loss, and that when so suspended said stock of goods, wares and merchandise and accounts then on hand and belonging to said business was of the invoice price of one thousand

dollars and ten cents, but was not of a market value of more than nine hundred dollars, and that at said date when said business was suspended there was existing a valid subsisting indebtedness against said business an aggregate amount of one thousand fifty six 13/100 dollars, including one hundred dollars then due to J. D. Baldridge for services rendered by him in attending to said business.

"That on or about July 1, 1905, deponent says that in order to pay off said indebtedness due on said business he was compelled to sell said goods, wares, and merchandise and did sell the same to M. S. Baldridge for a valuable consideration, a consideration in excess of the value of said goods, wares and merchandise, and that said M. S. Baldridge paid therefor, by and with her individual, separate funds borrowed by her, and for the repayment of which she gave her personal obligation, and pledged her separate estate.

"That said sale to M. S. Baldridge was not made for the purpose of defrauding creditors, nor for the purpose of defrauding plaintiffs, but was made for the purposes stated above; that said M. S. Baldridge is the legal and equitable owner in her own separate right of said goods, wares and merchandise, representing the Baldridge interest in the firm of Baldridge, Whatley & Allen, and that J. D. Baldridge has no interest whatever in said business in his own right."

No evidence was heard nor considered by the court in determining whether the injunction should be dissolved; but it seems the court acted alone upon the statement contained in defendant's motion to dissolve.

*Opinion.*—Upon motion to dissolve an injunction on bill and answer, the answer, when sworn to, in so far as it is responsive to the bill, is taken as true. And the rule is that when the sworn answer fully and unequivocally denies all the material allegations of the bill upon which complainant's equity rests, the injunction will be dissolved. This rule, however, requires positive averments in the answer and not merely general allegations of denial based on information and belief. The denial must be of the same positive character as the averments in the bill on which the complainant's equities are based. Nor will an answer suffice where it is not fully responsive to the bill. But where the allegations of the answer are full and responsive to the bill and fully deny its equity, the injunction will be dissolved unless apparent irreparable mischief is likely to ensue from its dissolution, or unless some peculiar circumstances exist to warrant a departure from the rule. (High on Injunction, sec. 1505.)

But the dissolution, like the granting of the interlocutory injunction, is largely a matter of judicial discretion, to be determined by the nature of the particular case under consideration. A dissolution, therefore, does not necessarily follow upon the coming in of the answer denying the material allegations of the bill upon which the injunction issued, and the court may, in the exercise of a sound judicial discretion, refuse a dissolution and continue the injunction for a hearing, where the circumstances of the case seem to demand this course. Especially will this discretion be exercised where fraud is the grava-

men of the bill, or where it is apparent to the court that a dissolution of the injunction would result in greater injury and hardship than its continuance to the hearing, or where it is apparent that by the dissolution complainant would lose all the benefit which would otherwise accrue to him should he finally succeed in his cause. A temporary injunction should not be dissolved where its dissolution would result in irreparable injury to the plaintiff. (High on Injunctions, sec. 1508.)

Taking the view of the pleadings and the proceedings most favorable to the action of the court in dissolving the injunction, and regarding the facts set out in the motion as the defendants' answer to plaintiffs' bill, it will be seen that there is not a full and unequivocal denial of all the material allegations relied upon by plaintiffs for the injunction. But on the contrary, it rather intensifies the plaintiffs' showing of their right to the writ, in that it shows that defendant J. D. Baldridge, in violation of the trust reposed in him by plaintiffs, as shown by the written agreement, has without authority made a simulated sale of plaintiffs' property, intrusted to his care and management, to his wife, and is claiming possession and the right to dispose of it under such fictitious sale. The pretended sale to his wife is no better than a sale of the property by Baldridge to himself, that is, no sale at all. For, as is held in Heidenheimer v. McKeen (63 Texas, 229), merchandise purchased by the wife with money borrowed upon the faith of her separate property as security, is not the separate property of the wife but community property of the husband and wife.

The sworn allegations in defendants' motion to dissolve the injunction, being no answer, such as equity requires, to the plaintiff's bill, which must be taken as true in the absence of such an answer, it necessarily follows that the court erred in dissolving the temporary injunction. Wherefore such interlocutory order is reversed and vacated and judgment is here rendered reinstating said injunction to its original force and effect, to so remain until the case is finally disposed of on its merits.

*Reversed and rendered.*