PETERS et al. v. CITY OF SAN ANTONIO et al. (No. 5915.)

(Court of Civil Appeals of Texas. San Antonio. May 23, 1917.)

1. INJUNCTION ☞172—TEMPORARY RESTRAINING ORDER—DISSOLUTION—WHEN PROPER.

Where the verified answer denied every material allegation in the petition and there was no evidence offered in support thereof nor agreement to submit the cause on the bill and answer, it was discretionary with the trial judge to dissolve his temporary restraining order and refuse a temporary injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 372–384.]

2. APPEAL AND ERROR ☞946—REVIEW—DISCRETION.

A discretionary order or decree of the trial court will not be reversed on appeal unless it clearly appears from the record that there has been a disregard of the rights of a party.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3812.]

3. MUNICIPAL CORPORATIONS ☞661(1)—USE OF STREETS—REGULATION.

A city given absolute control of its streets by the Legislature may wholly prohibit the use of its streets for prosecution of any private business or grant the use with such restrictions as it deems proper.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1432, 1434.]

4. MUNICIPAL CORPORATIONS ☞661(1)—USE OF STREETS—JITNEY BUSINESS.

A city given absolute control over its streets by the Legislature has power to prohibit the use of jitneys on any street or confine their use to certain streets.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1432, 1434.]

5. CONSTITUTIONAL LAW ☞101—JITNEY LICENSE—VESTED RIGHTS.

Plaintiffs operating a jitney under a license issued by virtue of an ordinance providing that city council shall have the right to revoke, annul, and alter any license given to operate a jitney, and that the routes named in application or license may be altered by ordinance passed wholly upon the initiative of the city council, had no vested rights in the use of the streets, and an ordinance of city council prohibiting operation of jitneys upon certain streets and confining their use to certain others was valid.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 209–211.]

6. CONSTITUTIONAL LAW ☞99, 101—VESTED RIGHTS.

A citizen has no vested rights in statutory privileges and exemptions.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 204, 205, 209–211.]

7. MUNICIPAL CORPORATIONS ☞661(2)—CONSTITUTIONAL LAW—EQUAL PROTECTION OF LAWS—DISCRIMINATION—JITNEYS.

An ordinance prohibiting jitneys, other than those operating from A. to U., from using certain streets, is not an unwarranted discrimination rendering ordinance invalid.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1435.]

8. CONSTITUTIONAL LAW ☞101 — IMPAIRING OBLIGATION OF CONTRACTS.

A revocable license to operate jitneys upon the streets of a city is not a contract which vests rights protected by the constitutional prohibition against impairment of contracts.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 209–211.]

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Suit by C. J. Peters and others against the City of San Antonio and others, in which J. G. Lentz and others filed a plea in intervention. From an order refusing a temporary writ of injunction, the plaintiffs appeal. Affirmed.

Barrett & Barrett and J. Marshall Eskridge, all of San Antonio, for appellants. Geo. R. Gillette, R. J. McMillan, and D. A. McAskill, all of San Antonio, for appellees.

FLY, C. J. This is a suit instituted by C. J. Peters, J. C. Nixon, T. A. Rieber, and V. S. Cardwell against the city of San Antonio, Clinton G. Brown, Robert F. Uhr, Ray Lambert, James Garland, and Clinton H. Kearney, the mayor and commissioners of the city of San Antonio, to restrain appellees from enforcing or attempting to enforce the provisions of a certain ordinance passed by Mayor Clinton G. Brown and the commissioners, in regard to the operation of certain motor busses, commonly known as jitneys, which prohibited the use of certain business streets for their business as common carriers and confined them to the use of certain other streets. J. G. Lentz, Nat Lewis, Edwin H. Witte, Paul Mueller, and A. K. Garretson filed a plea in intervention, setting up that the first three named were owners of real estate on Commerce street, and that the others were owners of stocks of goods and lessees of property on that street, and seeking to have the ordinance perpetually enjoined. This plea was based on allegations that the exclusion of jitneys from Commerce street would injure business and affect property values at least on that part of Commerce street between South Alamo street and Main Plaza. To the plea of intervention was appended a petition, numerously signed by citizens and business men on Commerce street, asking the mayor and commissioners of San Antonio that jitneys be permitted or direct-

ed to use Commerce street for their traffic. An answer verified by affidavit was filed by appellees. On April 6, 1917, a hearing on the pleadings was had, no testimony being offered, and a temporary writ of injunction was refused, and from that interlocutory order this appeal was perfected by the plaintiffs.

[1] The answer denied every material allegation in the petition, and no evidence was offered by appellants. There was no agreement to submit the cause on bill and answer. It was discretionary with the trial judge to dissolve his temporary restraining order and refuse a temporary injunction. Frazier v. Coleman (Tex. Civ. App.) 111 S. W. 662; Dawson v. Baldridge, 55 Tex. Civ. App. 124, 118 S. W. 593.

[2] In case of apparent abuse of the discretion, an appellate court might reverse the order or decree of the trial judge; but it should appear clearly from the record that there has been a disregard of the rights of a party before such action will be taken.

It has been held by this court, and approved by the Supreme Court, that complete control of the streets has been placed by the Legislature of Texas in the hands of the city government of the municipality of San Antonio. Greene v. City of San Antonio, 178 S. W. 6. In that case this court held:

"Appellant has no right or authority whatever to conduct his business on the streets of San Antonio and, in order to obtain permission to do so, must comply with the conditions prescribed by the municipality. Appellant desired to use the streets for private purposes of gain, and the city has the absolute right to prohibit the use of the streets for his private business, and in case it gave permission for such use had the right to compel the payment of a license fee."

Again this court said:

"So, in this case appellant has never had any vested right to use the streets of San Antonio to engage in the business of a common carrier of passengers for hire, and no right of his is infringed or invaded by the ordinance requiring certain things to be done in order to enter into business on the streets, which have, at the expenditure of large sums, been placed by the city in prime condition for automobile travel. The streets belong to the public, the city being a trustee, and no private individual or corporation has a right to use such streets for the prosecution of a business without the consent of the trustee and a compliance with the conditions upon which the permission to so use them is given."

In the case of Le Blanc v. New Orleans, 138 La. 243, 70 South. 212, the Supreme Court of Louisiana cites with approval the opinion in the Greene Case and quotes largely from it. It is true that the case afterwards came before the Louisiana court, when Le Blanc was convicted for violating the jitney law, and that an opinion was written in conflict with the former; but on rehearing, after five different opinions had been rendered by as many judges, the cause was finally decided as in the former case. In the opinion finally prevailing, the following language from the first Le Blanc Case was quoted with approval:

"The streets of the cities and towns in Louisiana being among the things that are 'public' and 'for the common use,' no individual can have a property right in such use for the purposes of his private business, unless, speaking generally, that business being in the nature of a public service or convenience, such as would authorize the grant, the right has been granted by the state, which alone has the power to make or authorize it, or, by the particular city or town, acting under the authority of the state, and in such case the right can be exercised only in accordance with the conditions of the grant; that is to say, an individual seeking, but not possessing, a right of that kind, may accept the grant, with the conditions imposed by the offer, in which case he becomes bound by the conditions, or he may refuse to accept the conditions, in which case there is no grant, and without the grant so offered, or some other, from the authority competent to make it, he can never acquire the right to make use of a street as his place of business."

That was the language of Chief Justice Monroe in an able and thorough opinion on the subject. City of New Orleans v. Le Blanc, 139 La. 113, 71 South. 248.

In the case of City of Memphis v. State, 133 Tenn. 83, 179 S. W. 631, L. R. A. 1916B, 1151, the Supreme Court held, in a "jitney" case:

"It is too clear for extended discussion that it was competent for the Legislature under the police power to regulate the use of the streets and public places by jitney operators, who, as common carriers, have no vested right to use the same without complying with a requirement as to obtaining a permit or license. The right to make such use is a franchise, to be withheld or granted as the Legislature may see fit"—citing a number of authorities; the Greene Case by this court being one of them.

In this connection, it may be well to say that:

"What the Legislature may do itself in the matter of regulation and control of streets in a municipality, it may delegate to a municipality to do itself." Huston v. Des Moines (Iowa) 156 N. W. 883.

In another opinion by the Iowa court it was held:

"The state has, and has always assumed, control over all the public highways within its borders. Through its Legislature, it has authority to and has delegated to cities the control of public highways, streets, and alleys within the limits of the city." Louden v. Starr, 171 Iowa, 528, 154 N. W. 331.

[3] The cases with unanimity decide that the Legislatures of states have full and complete control over the highways, streets, and alleys, and that such control may be delegated to municipalities, and it follows from such complete control that the use of the streets for the prosecution of any private business may be wholly denied, or granted with such provisions and regulations as may be deemed proper by the municipality. When a franchise is granted, during its existence unreasonable and oppressive regulations might form the ground of complaint; and, when a vested right is regulated, the reasonableness of the regulation could undoubtedly be made the subject of judicial investigation. But, when a privilege to which a party has no right has been given and which is

granted for an indefinite time and which can be terminated at any time by the granting power, we fail to understand how the reasonableness of such regulations can be made the basis of an attack.

[4] If the municipality has absolute control over the streets, as impliedly admitted by appellants and as decided by almost every court passing upon the question, and the owners of motor vehicles have no right to engage in the business of carriers for hire on the streets without permission from the municipality, it follows in the line of reason and logic that the city can refuse such permit, or can grant a license or franchise under such conditions and regulations as may be deemed fit and proper. If the city can ordain that no jitneys can be run for hire in San Antonio, as the authorities unite in saying it can, it certainly can grant the use of some streets, and refuse the use of others, for jitney purposes. The power to prohibit certainly carries with it the right to regulate as it may deem proper and reasonable. The owners of jitneys are permitted to conduct their business on the streets through the grace of the city, and because they have been permitted to use certain streets at one time does not give any vested right to use them forever. The power that gave the right can take it away when not invading some vested or contract right.

When the right to use the streets is given, the convenience of the city, or what is deemed best for the people, is to be consulted, and not the desires of those who desire to convert the streets into their places of business. If the people, the voters of San Antonio, do not approve of the manner of regulation of jitneys, they can elect officers and instruct them to carry out their desires. It is a political question to be determined by the ballots of the people and not by the judiciary.

[5] If a franchise has been granted to a person to use the streets for his private business, and that franchise is hampered and impaired by unreasonable or oppressive regulation, the person aggrieved might appeal to the courts for redress; but such a state of affairs is not presented in this case. It is not claimed that appellants have been granted any franchise in this case which is being impaired or destroyed by the ordinance that is assailed; but it is merely alleged that they are operating under a license issued by virtue of an ordinance passed on March 8, 1915, and that they have expended money upon the faith of that ordinance. It is not alleged that they were ever given a franchise for a certain length of time, but they admit the license was issued on certain conditions. The whole theory upon which the application for an injunction is based is that appellants have a vested right in the streets of San Antonio, which has not been conceded by any court.

The ordinance of March 8, 1915, did not tend in any manner to lead appellants to the conclusion that they had a permanent and unassailable right or franchise in the streets of San Antonio, and, if they were absolutely denied the right to run their automobiles or jitney cars on the streets of San Antonio, the obligation of no contract has been impaired. In the ordinance it is distinctly provided that the city council shall have the right to revoke, annul, and alter any license given to operate a jitney, and that the termini, schedules, or routes named in the application or license "may be altered by ordinance for the improvement of the service or better disposition of traffic, passed wholly upon the initiative of the city council." Provision was made for the return of the unearned part of the license fee to the licensee. No fraud or deceit was practiced upon the appellants, but they and each of them was duly notified of the powers retained by the city. Under the terms of that ordinance, which entered into and became a part of the contract with the city, every dollar of the unearned license fee under the ordinance will be returned to appellants, and not one of them will be any worse off than he was before the ordinance was enacted. Not because any right of appellants has been invaded, for they have none in the premises, but because they are not pleased with the routes laid out for the use of jitneymen in San Antonio, they desire to enjoin the enforcement of the ordinance. When the city has returned any unearned license fees to which they may be entitled, they have received everything that is due them from the city, and, if they do not approve of the routes prescribed, they are under no obligations to remain in the jitney business.

[6] If the city of San Antonio desired to drive the jitneymen out of business, it was not necessary to "so regulate them as to drive them out of business"; but it could have proceeded directly by repealing the ordinance of 1915 and revoking all licenses. As said by Judge Cooley, in his great work on Constitutional Limitations (pages 546 and 547):

"The citizen has no vested right in statutory privileges and exemptions. * * * A franchise granted by the state with a reservation of a right of repeal must be regarded as a mere privilege while it is suffered to continue; but the Legislature may take it away at any time, and the grantees must rely for the perpetuity and integrity of the franchises granted to them solely upon the faith of the sovereign grantor."

In the ordinance itself the power was reserved to revoke licenses at any time, and this was agreed to by appellants.

The case of Railway v. Brownsville, 45 Tex. 88, cited by appellants, has no pertinency to the facts of this case. In that case permission to use the streets had been granted by the city, and the Supreme Court held that the right to use the streets had been

conferred on the railway company by the laws of Texas. The court said: "Nor is the right to use the streets dependent upon the consent and agreement of the city." Of course, the city could not enjoin the use of the streets by the railway company. The other cases cited by appellants are not applicable to this case. In the case of the laundrymen of San Francisco, it was held in Yick Wo v. Peter Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220, that the city could not arbitrarily prohibit laundries from being erected in a certain large district. The ordinance in that case was seeking to destroy the right of a man to conduct a lawful business in an arbitrary and unreasonable way, and the Supreme Court held that it could not be done. It was an attempt to invade and destroy a vested right, and that could not be done in an unreasonable and oppressive way.

[7] Appellants complain because jitneymen running from Alamo Plaza to Camp Wilson are permitted to operate "on Avenue D and Avenue E and on Houston street in front of the post office solely for the purpose of passing from Avenue E to Avenue D," and such vehicles are permitted to enter Houston street from Avenue E and depart by Avenue D. The gist of the complaint is that no other jitneys are allowed to run around the post office, and this "is an unwarranted discrimination and renders the ordinance invalid." Where the discrimination enters is not apparent. Why any one on any other route would desire to run around the post office cannot be ascertained. It is a matter with which others than those on that route have no concern. It takes away no privilege from them whatever, and they have no right to make complaints about it. No right of theirs has been invaded, and no one will prevent them from taking the Camp Wilson route. The whole trouble is that appellants are basing all their complaints on the invasion of vested rights, when they have none to be invaded by the ordinance. As said by the Supreme Court of West Virginia in Ex parte Dickey, 85 S. E. 781, L. R. A. 1915F, 840:

"The right of a citizen to travel upon a highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stage coach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all; while the latter is special, unusual, and extraordinary. As to the former, the extent of legislative power is that of regulation; but, as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities. A distinction must be made between the general use, which all of the public are permitted to make of the street for ordinary purposes, and the special and peculiar use, which is made by classes of persons in the pursuit of their occupation or business, such as hackman, drivers of express wagons, omnibuses, etc."

That language was used in a jitney case, in which rights in the use of the streets were being claimed. The court further held:

"Under the broad power given by this charter, to grant, refuse, and revoke licenses to hotel keepers and operators of vehicles kept for hire, and to regulate them for the interest and convenience of the inhabitants of the city, the commissioners may do anything respecting these subjects that the Legislature itself could do, and, as we have shown, that power is almost unlimited."

[8] Appellants have no contract rights that have been impaired, or vested rights that have been assailed. To use the language quoted and approved in Auto Transit Co. v. City of Ft. Worth, 182 S. W. 685:

"As a license authorizing a person to practice a profession, or to carry on a particular business, is not a contract which vests a right, but merely the grant of a privilege, such a license is not protected by the constitutional prohibition as to the impairment of the obligation of contracts."

The judgment is affirmed.