## HIGHTOWER v. PRICE.    (No. 10288.)

(Court of Civil Appeals of Texas. Fort Worth.
Oct. 14, 1922.)

**1. Pleading ⬮➾400, 422 — Verification of petition or answer may be waived; verification waived by failure to object to hearing on unverified answer and to introduction of evidence.**

In view of Vernon's Sayles' Ann. Civ. St. 1914, art. 4671, making general principles of equity applicable to injunction, the verification of a petition for injunction or an answer thereto pursuant to articles 4663, 4671, when a hearing is had on petition and answer, may be waived, and was waived by failure to object to the' hearing on an unverified answer, and to the introduction of evidence.

**2. Mines and minerals ⬮➾81 —Evidence held to warrant temporary injunction pending determination of rights of plaintiff ousted from oil lease premises.**

Evidence of probable injury to plaintiff who had been unlawfully ousted from oil lease premises by virtue of a judgment to which he was not a party, and not thereby bound, held sufficient to warrant an injunction.

**3. Mines and minerals ⬮➾117—Purchaser at lien foreclosure sale of oil property held to take as against record owner in possession not joined in suit only such right as defendant may have.**

Where, at time of suing an oil and refining company to foreclose a laborers' lien on oil lease property, there are of record contracts whereby it practically disposed of its interests, and another not joined in the suit is in possession thereunder, a purchaser at the sheriff's sale under the judgment acquires only such right as the company may have.

**4. Mines and minerals ⬮➾81 — Injunction is proper remedy to restore oil lease property to rightful owner forcibly ejected.**

Injunction, is proper remedy to restore the management, operation, and control of oil leases to the person entitled thereto, where he has been forcibly and fraudulently deprived of such right.

Appeal from District Court, Wichita County; Orus O. Ross, Special Judge.

Action by Nay Hightower against E. D. Price. From an order dissolving a temporary injunction, plaintiff appeals. Reversed.

Bonner, Bonner & Sanford, of Wichita, for appellant.

Carrigan, Montgomery, Britain & Morgan, of Wichita, for appellee.

BUCK, J. Nay Hightower, plaintiff below and appellant here, on June 3, 1922, filed his amended original petition in the district court, alleging that he was the owner of an interest in and to certain oil and gas leases in Wichita county, together with the person-

al property thereon, and used in connection therewith. The tracts described were numbered 1, 2, and 3. He alleges: That on January 25,. 1921, the Bell Oil & Refining Company, a joint-stock association, being then the owner of an undivided one-half interest in and to the oil and gas leases above described, and the oil wells, tanks, derricks, pipe lines, machinery, and equipment located thereon, executed and entered into three separate written contracts with one E. S. Dixon, whereby said Dixon undertook the performance of said repairs and of cleaning out said oil wells and operating the same as specified in said contracts, and in return for said services the Bell Oil & Refining Company agreed and bound itself that said Dixon should receive, so long as oil should be produced from said respective tracts, an undivided seven-sixteenths of all oil and gas thereafter produced from said premises. That the two contracts affecting tracts numbered 1 and 2 were thereafter duly filed for record in the office of the county clerk of Wichita county, but that the contract affecting tract No. 3 was not so recorded, and that the petitioner did. not have a copy thereof or the original, and did not know at the time of filing suit where such copy or original could be found, but that said contract was similar in form and substance to the other two contracts, and conveyed to said Dixon an interest in tract No. 3 identical with the interest conveyed to him in the other two contracts. That thereafter, on, to wit, the 6th day of February, 1922, said Dixon, for a valuable consideration, assigned and transferred all of his said interest and title in and to the three tracts and to the oil wells and personal property thereon, and to the oil and gas produced and to be produced from each of said tracts to the plaintiff, and that the plaintiff is now the owner of each and all of the contracts and the rights thereunder heretofore mentioned. That by reason of his ownership of said contracts and the interest thereby conveyed, the plaintiff is the owner of the seven-sixteenths interest in and to all the oil and gas produced and to 'be produced from' said property, and, as such owner, is receiving, periodically, payment for his share of the oil and gas produced from said tracts, and that plaintiff is also the owner, by virtue of said contracts, of an interest in the personal property and equipment on each of the said tracts. That, by mutual consent of all parties, the wells on tracts numbered 2 and 3 have been abandoned, and this plaintiff is the owner of 50 per cent. of the salvage value of the pipe and all the materials upon each of said tracts. That heretofore, on, to wit, the 10th day of October, 1921, the defendant E. D. Price recovered a judgment against the said Bell Oil & Refining Company for the sum of $2,413.50 principal and $139.65 interest,

---

⬮➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

which judgment also decreed in favor of E. D. Price and against the Bell Oil & Refining Company a foreclosure of a laborer's lien upon the oil and gas leases and premises hereinbefore described. There are further allegations that Price had no laborer's lien, by reason of certain stated facts and circumstances, but, inasmuch as the evidence sustaining such allegations is very meager, we will not further consider said allegations.

Plaintiff further alleged: That neither he nor Dixon was made a party to the suit by Price against the Bell Oil & Refining Company, and that they were not bound thereby. That no notice of lis pendens was ever filed by Price in the suit against the Bell Oil & Refining Company. That, in violation of the rights of the plaintiff, Price, on the 24th day of February, 1922, caused to be issued out of the district court, where the judgment previously mentioned had been obtained, an order of sale, and that subsequently thereto a sheriff's sale of this property was had, and that Price made the only bid therefor, to wit, $100, and bought in the property. That the sheriff made and executed a sheriff's deed to said Price, on, to wit, about the 3d day of April, 1922, and that defendant, unless restrained, will place said purported sheriff's deed upon record, and the same will be a cloud upon plaintiff's title, and will prevent him from selling his share of the oil on said premises. That plaintiff was in possession of said property, through his agent and representative on the ground, and was pumping and operating the well on the lease heretofore referred to as tract No. 1. That, upon receiving the sheriff's deed, said Price went to the property aforesaid, and proceeded with force and violence to eject and did eject the plaintiff's agent and representative therefrom, and did take possession of said property, both real and personal, and has ever since held the same.

Plaintiff further alleged that said Price was not a skilled driller, and that it was necessary in order to preserve said well to operate it carefully and skillfully, inasmuch as there was danger of the oil sand becoming saturated with water. Plaintiff further alleged that, by reason of the negligence and unskillful attempts of the defendant to operate the property since he took possession thereof, the well had been injured and the value of the property had been decreased from $3,000 to $2,000, and production thereof decreased from eight barrels per day to five barrels per day, and by reason thereof plaintiff has already been damaged in the sum of $500.

Upon the presentation of the petition to the special judge of the Seventy-Eighth district court, on June 3, 1922, a temporary restraining order was issued against the defendant, restraining him from recording or attempting to record the sheriff's deed described in plaintiff's petition, and from fur- ther interfering with the property described in said petition, and from exercising any dominion or control over the same, and from further withholding the same from the plaintiff. The court further ordered that on the 10th day of June, 1922, the defendant should appear and show cause why the temporary injunction theretofore issued should not be continued, and why a mandatory injunction should not issue as prayed for in said petition. On said June 10th the defendant filed an unverified answer, consisting of a general denial, and specially limiting the answer to the cause of action on the temporary injunction theretofore issued. On a hearing on said June 10th, evidence being heard, the court dissolved the temporary injunction theretofore issued, and the plaintiff has appealed.

[1] Appellant's first proposition is that, where the allegations of the plaintiff's petition for injunction are not denied, under oath, they must be taken as true, and he cites in support of this proposition such cases as Dawson v. Baldridge, 55 Tex. Civ. App. 124, 118 S. W. 593; Tipton v. Railway Postal Clerks' Investment Association (Tex. Civ. App.) 173 S. W. 562; San Antonio Water Supply Co. v. Green (Tex. Civ. App.) 198 S. W. 631; Houston Elec. Co. v. Mayor et al. of Houston (Tex. Civ. App.) 212 S. W. 198; Moore v. Coleman (Tex. Civ. App.) 185 S. W. 936.

Appellee urges that the allegations of the plaintiff's petition are not to be taken as true on order by the court for hearing, and cites such cases as Smith v. Palo Pinto County, 60 Tex. Civ. App. 531, 128 S. W. 1193, and Leach v. Thompson (Tex. Civ. App.) 192 S. W. 602. Article 4663, V. S. Tex. Civ. Statutes, provides that:

"The defendant to an injunction proceeding may answer as in other civil actions; but no injunction shall be dissolved before final hearing because of a denial of the material allegations of the plaintiff's petition, unless the answer denying the same is verified by the oath or affirmation of the defendant."

In Smith v. Palo Pinto County, supra, this court affirmed a judgment of the lower court dissolving a temporary restraining order, and said:

"The confusion in counsel's mind perhaps arises out of the fact that the law at an early day required both the petition and the answer in injunction proceedings to be verified by an oath. Paschal's Dig. art. 3929. But such is not now the law. It is true that article 3006 [now 4663] of the present statute (Rev. St. 1895) declares that no injunction shall be dissolved before final hearing because of a denial of the material allegations of the plaintiff's petition, unless the answer denying the same is verified by the oath or affirmation of the defendant, yet clearly this contemplates a dissolution upon the denial alone and has no reference to a dissolution on demurrer or full hearing, as in the present case."

See Article 4671, Rev. Statutes; Scales v. Gulf, C. & S. F. Ry. Co. (Tex. Civ. App.) 35 S. W. 205; Murphy v. Smith, Walker & Co., 38 Tex. Civ. App. 50, 84 S. W. 678; Leach v. Thompson (Tex. Civ. App.) 192 S. W. 602.

But whether the hearing herein had was a full hearing, as referred to in Smith v. Palo Pinto Co., supra, or a final hearing, as provided in article 4663, and that theretofore the unverified answer authorized the trial court to dissolve the injunction, need not here be decided. The verification of a petition for injunction or an answer thereto, when a hearing is had on a petition and answer, may be waived. Wilkinson v. Lyon (Tex. Civ. App.) 207 S. W. 638; Collin County School Trustees v. Stiff (Tex. Civ. App.) 190 S. W. 216, 219. There appears in the record no objection to a hearing upon defendant's unverified answer, and to the introduction of evidence. Hence we hold that the lack of verification of defendant's answer was waived, and the assignment is overruled.

[2] Appellant's second assignment is that it is error for a trial court to refuse to grant an injunction and to dissolve a temporary injunction theretofore granted where a plaintiff in his petition for such writ shows that he has a probable right which would be invaded and violated unless the injunction prayed for is granted, and further shows that he has no adequate remedy at law, and further negatives every reasonable inference under which the defendant might be supposed to be entitled to do the acts sought to be enjoined, and where plaintiff's rights, as disclosed by his petition, are of an important and substantial character, and the acts of the defendant, if not enjoined, would probably cause irreparable injury to the plaintiff, and where the plaintiff shows that the injury to the plaintiff if the injunction be not granted will be greater than any possible injury to the defendant by the granting of the writ.

The evidence shows that the defendant went on the property, under the sheriff's deed, about the 11th day of April; that he tried to get hold of a man by the name of Smith whom the plaintiff had on the premises to look after it; that on or about the 10th day of April he saw Smith at Burkburnett, and told him that the property was sold, and that he (defendant) had a deed for it and would take possession of it the next morning; that Smith told him all right, he had the keys to the toolhouse, and would give them to defendant. Defendant took possession next morning and has been operating the well since.

Hightower testified that he had Smith on the property pumping the well for him, and that Smith did not see him at any time and tell him about Price being on the property, but that he did see plaintiff's brother about 10 or 15 days after Price had taken charge. He further testified that he and

Dixon, on a fifty-fifty basis, bought the right to operate these wells from the Bell Oil & Refining Company; that at the time of the purchase the wells were standing still, and that plaintiff took possession January 29, 1921, and started to clean out the wells; that he personally remained on the property and continued to clean out and operate and repair the wells with his own individual labor up to March 20, 1922, at which time Smith took charge; that he paid Mr. Dixon $750 for his interest, borrowing the money; that he agreed to pay Smith $30 per month to see after the well, and did pay him that amount up to the time Price took possession of the property; that the well was producing eight barrels a day up to the time he turned it over to Smith, and that it was bringing in an income of about $220 per month, out of which he paid the operating expenses; that it was not uncommon for a man to leave a well pumping and go away temporarily; that if he needed anything in town he could go for half a day; that soon after he learned that Price had gone on the premises he saw his lawyer and brought the suit for injunction.

Smith testified that, when he saw Price in Burkburnett, where Smith had been for five or six hours, Price told him about having a deed to the property, and asked for the keys; that he did not give the keys to Price, but told him that he had them out in the field; that he did not make any objections to Price going on the premises.

It does not positively appear from the testimony that the defendant, subsequent to his taking possession, accounted to plaintiff for the latter's seven-sixteenths of the oil but the evidence seems to show that he did not account or turn over to plaintiff any part of the oil or the proceeds from the same. It appears from the evidence that plaintiff had a contract giving him the right to pump the wells as long as oil was obtained therefrom, and to receive seven-sixteenths of the oil and gas. Two of these contracts, especially the one covering tract No. 1, were of record at the time of the judgment in the case of Price v. Bell Oil & Refining Company. It does not appear to us that the rights of plaintiff to further operate the well were in any way restricted by the provision in the contract between Dixon and the Bell Oil & Refining Company that the operator should have the right upon 30 days' written notice to terminate the contract. Said contract further provided that, in the event the operator so elected to terminate the same, the owner should have the right to pay the salvage value of any material placed on the property, and, if the parties thereto were unable to agree upon such value, they agreed to arbitrate for the purpose of settling such value. It is further provided that, in case the parties mutually agreed to abandon the well, the salvage value of the pipes and other material would be equally divided between

them, and that no abandonment should take place without the written consent of the owners.

[2] We think it is evident from the record that the defendant had taken possession of the premises and had ousted plaintiff therefrom by force by virtue of a judgment to which plaintiff was not a party, and not thereby bound, and that, if defendant should not be restrained from further acts of ownership and from further trespassing on the premises, the plaintiff would be irreparably injured, and that less damage is likely to occur by the granting of the writ to plaintiff than by denying it. Hence it appears to us that the trial court erred in not continuing the writ in so far as it prayed for an injunction restraining the defendant from going on the property and excluding the plaintiff therefrom, and from operating the well on tract No. 1, and from exercising the right of ownership on that part of the pipe lines, derricks and other personal property thereon which, under the contract between Dixon and the Bell Oil & Refining Company, belonged to the operator. In Dunsmore v. Lumber Co. (Tex. Civ. App.) 198 S. W. 603, it is said:

"The rule to be followed in determining the allowance of a temporary injunction is that of whether there is a case of probable right and probable danger to the right, as alleged, without the injunction."

See, also, Matagorda Canal Co. v. Martin Irrigation Co. (Tex. Civ. App.) 154 S. W. 1176; Hoskins et al. v. Cauble (Tex. Civ. App.) 198 S. W. 629, and cases there cited.

[3] Since neither the plaintiff nor Dixon was a party to the suit between the defendant and the Bell Oil & Refining Company, and since at least two of these contracts were on record in the county clerk's office, and the defendant was in actual possession of the premises, we think it follows that the purchaser at the sheriff's sale under the judgment could not acquire any more right than the Bell Oil & Refining Company had. Lightfoot v. Horst (Tex. Civ. App.) 122 S. W. 606.

[4] Premises considered, we will here enter the order which in our judgment the trial court should have entered, that the defendant be restrained from exercising any control over the well on tract No. 1, and from interfering with the plaintiff in operating the same, and from further withholding the possession thereof from him and from his authorized agents, until the further orders of the trial court upon a final hearing, and that a mandatory temporary injunction be issued requiring the defendant to turn over to the plaintiff any property on said leases in which, under the contract between the Bell Oil & Refining Company and Dixon, and the subsequent contract of sale between Dixon and plaintiff, plaintiff has an interest. Injunc-

tion is a proper remedy to restore the management, operation, and control of oil leases to the person entitled thereto, where he has been forcibly and fraudulently deprived of such right, management, and control by another without legal right. Bull v. Bearden (Tex. Civ. App.) 159 S. W. 1177; Jeff Chaison Town Site Co. v. McFaddin, 56 Tex. Civ. App. 611, 121 S. W. 716; Obets & Harris v. Speed (Tex. Civ. App.) 211 S. W. 316; Boynton v. Milmo (Tex. Civ. App.) 218 S. W. 510; Hammond v. Hoffman (Tex. Civ. App.) 192 S. W. 362; Hill v. Brown (Tex. Civ. App.) 225 S. W. 780. In the last cited case the defendant was withholding the possession of the property under a pretended option to renew a lease which had expired. Plaintiffs asked for a temporary mandatory injunction requiring appellants to vacate and surrender possession of the premises, which was granted by the court, and on appeal affirmed by the Dallas Court of Civil Appeals. In the course of its opinion the court said:

"It is well said that many of the restrictions upon the use of mandatory injunctions have, in modern times, given way to a more liberal construction of the powers of a court of equity in the use of such form of injunction. In keeping with this modern view, a mandatory injunction may be granted in a proper case, even without notice, for the purpose of restoring to the owner possession of the premises of which he has been deprived by trespass."

Inasmuch as the evidence shows that the sheriff's deed has already been recorded, that part of plaintiff's prayer which asks for a restraining order against the recording of the same need not here be considered.

Judgment reversed, and cause rendered as above indicated.