## TEXAS GULF SULPHUR CO. v. STATE et al. (No. 9327.)

Court of Civil Appeals of Texas. Galveston. April 12, 1929.

John M. Corbett, of Bay City, and G. G. Kelley and E. Hawes, both of Wharton, for appellant.

Ingram & Munson, of Wharton, C. R. Liskow, of Lake Charles, La., and Vinson, Elkins, Sweeton & Weems, of Houston, for appellee Union Sulphur Co.

Claude Pollard, Atty. Gen., and Paul D. Page, Jr., and Rice M. Tilley, Asst. Attys. Gen., for the State.

GRAVES, J. This appeal proceeds from a temporary injunction, issued on the application of the state by the district court of Wharton county, presumably pursuant to articles 4444, 7467, 7577, 5351, 7572, 4026, R. C. S. of 1925, and articles 697, 698, Penal Code, effective until its further order, and enjoining appellant, its agent and representatives, "in all things as prayed for in plaintiff's petition, and especially from permitting the waters emanating and escaping from the McCarson well No. 3 and the Banker No. 12, from flowing to or in the San Bernard River. As to all defendants other than said Texas Gulf Sulphur Company, their agents and repre-

sentatives, the prayer for injunction is denied. It is further ordered, by agreement of the plaintiff and the defendant Texas Gulf Sulphur Company, that this injunction shall not apply as to any waters flowing or emanating from the said wells that might be conducted through the salt water disposal system of the Lone Star Salt Water Company, or the Texas Gulf Sulphur Company, and deposited in the San Bernard river at or below Black's Ferry in Brazoria county."

The wells affected were on the Boling sulphur dome in Wharton county. The other defendants than appellant, a private corporation, were the Union Sulphur Company, a like corporation, and two individual persons. Making no complaint at the denial of the writ as to these persons, appellant does vigorously assail both its issuance against itself and the nonissuance thereof against the Union Sulphur Company, upon the contentions:

(1) That no case for the visitation of such restraining power was made out against it under either the pleadings or proof.

(2) That the state's petition for the order, together with the undisputed evidence received at the hearing, showed that the Union Sulphur Company alone, and not appellant, was the offender, in that it pumped hot water under pressure into nearby portions of the sulphur dome, and thereby, having made no provision for its disposition as a waste product, exclusively caused the polluted water complained of to rise to the earth's surface inside as well as outside of appellant's two wells, thence to flow into the San Bernard river.

Neither contention, we think, in the state of the record, can be sustained; as indicated in the beginning, this order enjoined appellant from the violation of specific statutory provisions reflected in the cited articles, particularly in R. S. art. 4444, which makes it unlawful for "any person, firm or corporation * * * to pollute any water course or other public body of water, by throwing, casting or depositing, or causing to be thrown, cast, or deposited any crude petroleum, oil or other like substance therein," etc., and provides for injunctive relief; the precise issue, therefore, was whether or not the appellant for its part was both charged with and shown to have done this particular malum prohibitum. It clearly was in each respect; the plaintiff's petition, after formal and other averments to the effect that the San Bernard was a water course and public body of water, within the purview of the statutes referred to, further alleged:

"4. That on or about the 3d day of November, A. D. 1928, the defendant Union Sulphur Company was engaged in the business of mining sulphur in Wharton county, and especially upon eighty (80) acres, more or less, in what is known as the McCarson tract in

block 22 of the Missouri Land Company subdivision of the Stephen F. Austin 3⅛ leagues.

"5. That in such mining, on or about the date above set out, the said defendants, and especially Union Sulphur Company, began to force into the earth in the land above described, through iron pipes, great quantities of hot water and steam, and that ever since said date said defendant has continued so to force hot water and steam into the earth at said point.

"6. That by reason of said acts of said defendant Union Sulphur Company the waters lying beneath the surface of the earth under said land and under various tracts of land nearby, and especially lying under blocks 13, 22, and 25 of the said Missouri Land Company subdivision, and the waters so forced into the earth in the form of hot water and steam, by said defendant Union Sulphur Company, have risen to the surface of the earth, flowing thence, as they are now flowing, into the San Bernard river, where the same lies within Wharton county.

"7. That said waters have flowed, and are now flowing, through two artificially constructed wells, known and designated as Mc-Carson No. 3, on block 22, Missouri Land Company subdivision of the Stephen F. Austin 3⅛ leagues, and Banker No. 12, on block 13, of the Missouri Land Company subdivision, Stephen F. Austin 3⅛ leagues.

"8. Plaintiffs further allege that the openings through which said waters are escaping from the surface of the earth, and whence they are precipitated into the waters of the San Bernard river, are located upon land owned, leased, or controlled by defendant Texas Gulf Sulphur Company, and that said openings were made and constructed by said defendant Texas Gulf Sulphur Company.

"9. Plaintiffs further allege that the waters so escaping from the surface of the earth have been and now are conducted to the San Bernard river, or to the land immediately adjacent thereto, and from whence they flow by gravity into the San Bernard river by ditches artificially constructed by said defendant Gulf Sulphur Company.

"10. That the flowing of these waters into the San Bernard river is not a natural flow, but that the flow of said waters is artificially caused by the various acts of the named defendants, which acts are above described and set out.

"11. That said waters so escaping and flowing into the San Bernard river are unclean, being composed of and containing numerous chemicals and other solutions dangerous and detrimental to marine life; that they contain free sulphur chloride, sodium chloride, sulphuric acid, and other minerals, and are poisonous to fish life, some of said fish life having been destroyed by said waters since the 3d day of November, A. D. 1928, and that, by the precipitation of said waters into said river, if continued, all fish in said stream will be killed and destroyed, and also rendered inedible, and the public rights of fishing and bathing in said waters will be measurably interfered with, and that the precipitation of said waters into said stream thus constitutes a public nuisance, against which the public, at the suit of the state, is entitled to protection.

"12. That said waters, being composed of and containing the chemicals and solutions above set out, are unfit for drinking by live stock, and that, by reason of the escape of said waters into said stream, said stream is rendered useless to the riparian owners of land in Wharton county, and that the flowing of said waters into said stream constitutes, therefore, a public nuisance, against which the public at the suit of the state is entitled to protection.

"13. That the acts above complained of are a continuous trespass, and defendants are threatening now to again commit and continue the acts complained of herein, to prevent which plaintiffs have no other adequate remedy at law, and which acts will destroy the fish and other marine life in said streams, which is the property of the state of Texas. That the acts above complained of are and constitute a continuing trespass upon the property of the state of Texas.

"15. That plaintiffs have no adequate remedy at law to prevent the precipitation and forcing of said waters into said stream, and, if said waters are permitted to be precipitated and forced into said stream, it will cause irreparable injury to the public in the various respects hereinabove detailed; that unless restrained by order of this court the defendants, or some one or more of them, will continue to precipitate or force said waters into said river, as they, or some of them, are at this time doing."

In reply the Union Sulphur Company pleaded:

"If any water has been or hereafter may be forced into said river, it has not been due to the fact that this defendant forced water into the ground, but has been due to the fact that the defendant Texas Gulf Sulphur Company has intentionally failed to close the valves at the top of the wells referred to, with which they are equipped, and which valves, had they been closed, would have prevented and will prevent the flowing of said water into said river."

While appellant, in substance, answered that the openings or outlets, through which the polluted mine waters were escaping to the surface, were necessary in order to relieve the pressure in the earth when hot water was introduced therein, as well as to prevent tremendous damage and injury to its sulphur lying underneath, and that the proximate cause of the pollution was the introduction of hot water into the earth by the other defendant.

■ The state's petition thus charged each and both of the corporate defendants with responsibility for the pollution complained of through their joint, concurrent, and several acts, appellant being specifically accused of having (1) pumped the hot water into the dome, along with its codefendant; (2) constructed the artificial wells and ditches on its own land; and (3) opened these wells and ditches, thereby causing and allowing the contaminated waters to flow through them into the river. These averments, if true, gave rise to a joint and several liability for the claimed pollution against both sulphur companies in favor of the state, which might, at its option, recover upon the basis of it against either or both of them as contributors to its injury. Day v. Louisville Coal & Coke Co., 60 W. Va. 27, 53 S. E. 776, 10 L. R. A. (N. S. ) 167; Straight v. Hover, 79 Ohio St. 263, 87 N. E. 174, 22 L. R. A. (N. S.) 276; McDaniel v. City of Cherryvale, 91 Kan. 40, 136 P. 899, 50 L. R. A. (N. S.) 388; Elder v. Lykens Val. Coal Co.. 157 Pa. 490, 27 A. 545, 37 Am. St. Rep. 742; People v. Gold Run Ditch & Mining Co., 66 Cal. 138, 4 P. 1152, 56 Am. Rep. 80; City of Valparaiso v. Moffitt, 12 Ind. App. 250, 39 N. E. 909, 54 Am. St. Rep. 522; San Antonio & A. P. R. Co: v. Gurley, 37 Tex. Civ. App. 283, 83 S. W. 842; Southwestern Portland Cement Co. v. Kezer (Tex. Civ. App.) 174 S. W. 661; Sullivan v. Dooley, 31 Tex. Civ. App. 589, 73 S. W. 82; Mexia Light & Power Co. v. Johnson (Tex. Civ. App.) 120 S. W. 534.

■ Neither was it necessary for the bill, after having so affirmatively alleged the commission by appellant of specific acts expressly made unlawful by the statute, to negative any supposable right in it to yet commit those acts, because no such right could exist, the terms of the statute itself defining pollution as constituting a wrong for the prevention of which injunction would lie. R. S. art. 4444; Cain v. State, 47 Tex. Civ. App. 382, 106 S. W. 770.

■ So much for the pleading. The evidence heard by the learned trial court undisputedly showed that appellant's two wells were the sole source through which the contaminated water that concededly was polluting the stream reached it, pollution ceasing immediately upon their being closed; that they were equipped with valves, the mere turning of which would shut off this water and stop its flow entirely; that they had at a time prior to this hearing been plugged, during which period no water escaped through them, but that appellant, through its field manager, later unstopped and allowed them to again flow and precipitate such water through its ditches into the river: the wells being left open all the time the production of sulphur by it was going on; the manager testifying that he did that "in order to keep from building up too high a pressure on the dome."

With these circumstances alone appearing, to say nothing of much else the statement of facts reflects, the granting of the temporary order, effective only against appellant, cannot be said to have been an abuse of the broad discretion vested in the trial court in such a proceeding; Houston Electric Co. v. City of Houston (Tex. Civ. App.) 212 S. W. 198; Graham v. Knight (Tex. Civ. App.) 222 S. W. 326; Porter v. Johnson (Tex. Civ. App.) 140 S. W. 469; Tyree v. Road District No. 5, Navarro County (Tex. Civ. App.) 199 S. W. 644.

■ While we find no evidence that any of the polluting water escaped into the river directly or immediately from the Union Sulphur Company's premises, nor otherwise than through these wells and ditches of the appellant, as stated, that condition would not have been controlling, had it existed; neither was the testimony actually received from appellant's witnesses tending to indicate that the pumping of hot water under pressure into the dome by the Union proximately caused the pollution, there being also evidence to the contrary. These matters, at most, only raised controverted issues of fact, which the court was not required to resolve upon a mere hearing for temporary injunction. 32 C. J. p. 38, par. 17.

■ Appellant's able counsel lay much stress upon the testimony of its field manager to the effect that tne Boling sulphur dome was what he termed a tight one—that is, one having no natural fissures or outlets for the escape of water pumped into it under pressure—and that, when the pressure from the presence of such water in appellant's wells reached about 15 pounds to the square inch at the top, he opened the valves and allowed it to escape, as before recited, in the belief that it threatened destruction to the dome. In view of the particular acts already pointed out as having been done by appellant, we do not consider the question of whether or not the dome was of this character material; but, if it was, and if a finding thereon by the court was necessary, it will upon appeal be deemed to have been made in such way as to support the judgment rendered, there having been sufficient contrary testimony to authorize a conclusion that this whole theory as to the essential nature of that territory was erroneous.

■ Since it was alleged that the complained-of acts constituted a continuing trespass, and that the defendants were then threatening to again commit and continue them, which averments were not specially denied under oath, it will be deemed that the court so found. Houston Electric Co. v. City of Houston, supra.

These conclusions require an affirmance of the judgment; that order has been entered.

Affirmed.