

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Game, Fish and Oyster Commission
Austin, Texas

Gentlemen:      Attention: Hon. Wm. J. Tucker

                Opinion No. O-1683
                Re: The pollution of the tidal waters
                      of the State of Texas, and related
                      questions.

      Your letter of recent date, touching the above matter, has been given our careful attention.

      Your letter, in part, reads as follows:

      "It is alleged that certain bays on the tidal waters of this State are being polluted. Will you kindly give us a ruling, at your earliest convenience, on the following questions:

      "1. What criminal charges, if any, can be instituted against a person or persons (other than municipalities) who pollute the bays and bayous on the tidal waters of the Gulf Coast, and thereby destroy the marine life in the said body of water?

      "2. Can the State of Texas obtain injunctive proceedings against a person or persons (other than municipalities) committing the acts set forth in Question Number 1, on the grounds that the same constitutes a public nuisance? Can injunctive relief be obtained by the State of Texas on any other grounds?

      "3. What other legal steps, if any, can the State of Texas take to prevent a person, or persons, (other than municipalities) from committing the acts enumerated in Question 1?"

      We shall quote the pertinent provisions of the various statutes of Texas relating to the subject of your inquiry.

      Article 7467, Revised Civil Statutes of Texas,

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

reads, in part, as follows:

"The waters of the ordinary flow and underflow and tides of every flowing river or natural stream, of all lakes, bays or arms of the Gulf of Mexico, and the storm, flood or rain waters of every river or natural stream, canyon, ravine, depression, or watershed, within the State of Texas, are hereby declared to be the property of the State...."

Article 4026, Revised Statutes of Texas, reads as follows:

"All fish and other aquatic animal life contained in the fresh water rivers, creeks and streams and in lakes or sloughs subject to overflow from rivers or other streams within the borders of this State are hereby declared to be the property of the people of this State. All of the public rivers, bayous, lagoons, creeks, lakes, bays and inlets in this State, and all that part of the Gulf of Mexico within the jurisdiction of this State, together with their beds and bottoms, and all of the products thereof, shall continue and remain the property of the State of Texas, except in so far as the State shall permit the use of said waters and bottoms, or permit the taking of the products of such bottoms and waters, and in so far as this use shall relate to or affect the taking and conservation of fish, oysters, shrimp, crabs, clams, turtle, terrapin, mussels, lobsters, and all other kinds and forms of marine life, or relate to sand, gravel, marl, mud shell and all other kinds of shell, the Game, Fish and Oyster Commissioner shall have jurisdiction over and control of, in accordance with and by the authority vested in him by the laws of this State."

Touching the property rights of the State of Texas in the marine life of the tidal waters of this State, we quote from an opinion by the Commission of

Game, Fish and Oyster Commission, Page 3

Appeals of Texas, in the case of Stephenson, et al
vs. Wood, et al, 34 SW 2nd 246:

> "The fish in the streams and coastal
> waters of Texas are the property of the
> State, and no person has any vested proper-
> ty right therein. Furthermore, the preser-
> vation of the wild game life of the State,
> including the fish in its streams and coastal
> waters, is a matter in which the people gen-
> erally over the State are interested...."

Article 4444, Revised Statutes of Texas, reads,
in part, as follows:

> "No person, firm or corporation, private
> or municipal, shall pollute any water course
> or other public body of water, by throwing,
> casting or depositing or causing to be thrown,
> cast or deposited any crude petroleum, oil or
> other like substance therein.... Insofar as
> concerns the protection of fish and oysters,
> the Game, Fish and Oyster Commissioner or his
> deputies, may have jurisdiction in the enforce-
> ment hereof.... Upon the conviction of any
> person for violating this law, the court or
> judge thereof in which such conviction is had,
> shall issue a writ of injunction enjoining
> and restraining the person or corporation re-
> sponsible for such pollution...."

See also Articles 5351 and 7577, Revised Civil
Statutes of Texas.

Turning now to the Penal Code of Texas, we find
the following relevant statutes:

Article 698, which reads, in part, as follows:

> "It shall be unlawful for any person, firm
> or corporation, private or municipal, to pollute
> any water course or other public body of water,
> by throwing, casting or depositing, or causing
> to be thrown, cast or deposited any crude petro-
> leum, oil or other like substance therein....
> Insofar as concerns the protection of fish and
> oysters, the Game, Fish and Oyster Commissioner,

Game, Fish and Oyster Commission, Page 4

or his deputies, may have jurisdiction in the enforcement of this chapter. A violation of any of the provisions of this chapter shall be punished by a fine of not less than $100.00 and not more than $1,000.00.... Each day such pollution is knowingly caused or permitted shall constitute a separate offense...."

Article 698a, enacted by the 42nd Legislature provides as follows:

"Sec. 1. It shall be unlawful to throw, cast, discharge or deposit crude petroleum, oil, acids, sulphur, salt water, oil refinery wastes or oil well wastes in or on any stream, water course or natural body of water of this State or in such proximity thereto that such crude petroleum, oil, acids, sulphur, salt water, oil refinery wastes or oil well wastes will reach such stream, water course or natural body of water; providing, however, that salt water or sulphur water, when such sulphur water is so treated that it will not be harmful to aquatic life or marine organisms, may be deposited in the tidal waters of this State; and providing further that when it is charged that there is a violation of this Act by throwing, casting, discharging or depositing crude petroleum, oil, refinery wastes or oil well wastes or accumulations of such deposits, covered an area of such water in excess of ten thousand (10,000) square feet or was on the surface of a river, stream, bayou or channel of this State for a distance in excess of three hundred (300) feet.

"....

"Sec. 3. Any person violating any provision of this Act or any director or officer of a corporation or member of a firm or partnership or receiver whose corporation, firm, partnership or receivership is responsible for the operations causing a violation of any provision of this Act shall be deemed guilty of a misdemeanor and upon conviction shall be fined in a sum not less than Two Hundred Dollars ($200.00) nor more than One Thousand Dollars ($1,000.00), and each day that such violation is committed shall

Game, Fish and Oyster Commission, Page 5

constitute a separate offense. The Game,
Fish and Oyster Commission and its repre-
sentatives is charged with the duty of en-
forcing the provisions of this Act and all
fines and fees of the arresting officer,
imposed for violations of this Act, shall
be remitted to the Game, Fish and Oyster
Commission and deposited in the State Trea-
sury to the credit of the Special Game Fund."

The answer to your first question is, therefore,
found in the foregoing provisions of the Penal Code.

You then ask whether or not the State of Texas
may obtain injunctive relief against a person or persons
polluting the bays and bayous on the tidal waters of the
Gulf Coast, the result of which is to destroy the marine
life in such waters. Such a procedure, in an analogous
situation, was considered by the Galveston Court of Civil
Appeals in the case of Texas Gulf Sulphur Company vs. State,
16 SW 2nd 408,409. We quote from the opinion of the court:

"Graves, J. This appeal proceeds from
a temporary injunction, issued on the appli-
cation of the state by the district court of
Wharton county, presumably pursuant to arti-
cles 4444, 7467, 7477, 5351, 7572, 4026, R.
C. S. of 1925, and articles 697, 698, Penal
Code, effective until its further order, and
enjoining appellant, its agent and representa-
tives, "in all things as prayed for in plain-
tiff's petition, and especially from permitt-
ing the waters emanating and escaping from
the McCarson well No. 3 and the Banker No. 12,
from flowing to or in the San Bernard River.
. . . . . . . .

"Neither contention, we think, in the
state of the record, can be sustained; as in-
dicated in the beginning, this order enjoined
appellant from the violation of specific stat-
utory provisions reflected in the cited arti-
cles, particularly in R. S. art. 4444, which
makes it unlawful for "any person, firm or
corporation .... to pollute any water course
or other public body of water, by throwing,
casting or depositing, or causing to be thrown,

Game, Fish and Oyster Commission, Page 6

cast, or deposited any crude petroleum, oil
or other like substance therein,' etc., and
provides for injunctive relief; the precise
issue, therefore, was whether or not the
appellant for its part was both charged with
and shown to have done this particular malum
prohibitum."

It is interesting to note that in the above
case, the State alleged, among other things, that the
pollution of the streams was dangerous and detrimental
to marine life and if continued, would kill all the fish
life in the stream; that the pollution of the stream
made the water unfit for drinking by livestock and ren-
dered the stream useless to riparian owners; that the
acts complained of were a continuing trespass; that the
defendants were threatening to continue their actions,
that there was no adequate remedy at law available to
the State, and that the destruction of the fish life
would be a destruction of property of the State and would
therefore cause irreparable injury to the public.

Interesting, also, is the case of Continental
Oil Company vs. City of Groesbeck, 95 SW 2nd 914, in which
the trial court had enjoined the defendant company from
polluting the water supply of the city of Groesbeck, not-
withstanding the ignorance of the officials of the defen-
dant company of a leaky pipe which was permitting salt
water to flow into the water supply of the city. In dis-
cussing the question of the abuse of discretion on the part
of the trial court, the appellate court stated that, irre-
spective of this question, the injunctive order would not
be invalid inasmuch as the defendant company was violating
the law, and therefore the injunctive order did not inter-
fere with its lawful rights. The language of the court,
in this particular, is as follows:

"Since the appellant has no right to
pollute the waters of Navasota River and its
tributaries, the writ granted in this case
in no wise interferes with appellant's lawful
right, and the appeal from the granting of
the writ presents no merit."

As a general proposition, therefore, you are re-
spectfully advised that criminal charges may be instituted

Game, Fish and Oyster Commission, Page 7


against a person or persons polluting the bays and bayous on the tidal waters of the gulf coast, the result of which is to destroy the marine life in such waters and the circumstances of which otherwise are within the purview of the quoted provisions of the Penal Code. Of course, a specific opinion on a particular situation can be resolved only with a knowledge of all the facts relating thereto.

Furthermore, it is our opinion that injunctive proceedings are available to the State of Texas in such situation, depending, likewise, upon the particular fact situation.

Our answer to your questions (1) and (2) renders, we believe, unnecessary an answer to your question (3).

We trust this answers your inquiry satisfactorily and we remain

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Wm. J. Fanning
Assistant

By Zollie C. Steakley

ZCS:AW


APPROVED NOV 29, 1939

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY BCofs